## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **GLORIA JEAN JONES,**                     ) | |
| )                                          | |
|      **Plaintiff**               ) | |
| )                                          | |
| **v.**                                     ) | |
| )                                          | **Case No. 16-2207-CM** |
| **ANTHONY FOXX, in his official capacity as** ) | |
| **Secretary of the United States Department** ) | |
| **of Transportation, Federal Aviation**    ) | |
| **Administration,**                        ) | |
| )                                          | |
|      **Defendant.**              ) | |
| _____ )   | |

### MEMORANDUM AND ORDER

Plaintiff Gloria Jean Jones brings this employment discrimination action pro se against her employer the Federal Aviation Administration ("FAA"). Plaintiff claims that her supervisor discriminated against her based on her protected class characteristics during a number of different incidents, ultimately denying her placement in a job that she wanted. The case is before the court on defendant's motion to dismiss or for summary judgment (Doc. 24). For the following reasons, the court grants defendant's motion.

### I.    Legal Standards

Defendant moves to dismiss some of plaintiff's claims under Fed. R. Civ. P. 12(b)(1). Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) is appropriate when the court lacks subject matter jurisdiction over a claim. Plaintiff claims that subject matter jurisdiction exists and has the burden of establishing it. *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008). Because federal courts are courts of limited jurisdiction, however, there is a strong

presumption against federal jurisdiction. *Sobel v. United States*, 571 F. Supp. 2d 1222, 1226 (D. Kan. 2008).

Defendant also moves for summary judgment on the claims against it. Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Where, as here, the plaintiff proceeds pro se, the court construes the pro se filings liberally. *Hall v. Doering*, 997 F. Supp. 1445, 1451 (D. Kan. 1998) (citing *Hughes v. Rowe*, 449 U.S. 5, 9–10 (1980)). On the other hand, a plaintiff's pro se status does not relieve her from complying with this court's procedural requirements. *Barnes v. United States*, 173 F. App'x 695, 697 (10th Cir. 2006) (citations omitted); *see also Santistevan v. Colo. Sch. of Mines*, 150 F. App'x 927, 931 (10th Cir. 2005) (holding that a pro se litigant must follow the same rules of procedure as other litigants).

## II.    Factual Background

Plaintiff does not controvert any of defendant's proposed statement of material facts. The court adopts all of the facts set forth by defendant, and recounts those relevant to the court's decision below.

Plaintiff's claims range in time from October 2012 through February 2013. During this time period, plaintiff worked as a 334 Computer Specialist at the Airways Facilities sector of the Kansas City Air Route Traffic Control Center ("KCARTCC ") in Olathe, Kansas. Born in 1959, plaintiff is a black female who has sickle cell anemia. She is a Christian and had a sixteen-year-old son in 2013.

### Plaintiff's Job

Plaintiff's supervisor from 2010 through 2014 was Brian Smith.  Plaintiff claims that Smith discriminated against her on the basis of her race, sex, age, religion, disability, and genetic information (sickle cell anemia).  Smith, however, was unaware of plaintiff's protected class characteristics (other than plaintiff's sex and race).  Although plaintiff told Smith in 2000 that her oldest son died of sickle cell anemia, plaintiff never mentioned her sickle cell anemia during the 2010 through 2013 time period.  During the relevant time period, Smith did not know plaintiff's age, religion, disability status, or genetic information.

Computer Specialists were responsible for all computer program load operations for the real-time National Airspace Systems HOST computer system, which enables Air Traffic Controllers to perform their daily job duties and responsibilities for the FAA and the flying public.  Duties of Computer Specialists revolved around the HOST computer.  In October 2012, plaintiff worked the midnight shift.

In early 2002, the FAA began work to upgrade its computer system at all twenty air traffic control centers nationwide.  The project was called En Route Automation Modernization ("ERAM"), and it replaced the HOST computer system.  KCARTCC began using ERAM in January 2013 and its Operational Readiness date was April 4, 2013, which meant its HOST computer was turned off and KCARTCC could remove it.

Plaintiff learned in the early 2000s that the FAA planned to replace the HOST computer system. Once ERAM was fully operational, plaintiff knew she would no longer perform the functions of a Computer Specialist and she would have three options: she could transition to a technician ("2101") position, transition to an IT specialist position, or take early retirement.  Plaintiff's supervisor developed an Individual Development Plan ("IDP") in 2001 that authorized plaintiff to take courses necessary to transition from her Computer Specialist position to a 2101 position.  There were five

prerequisite courses for the 2101 position. Plaintiff completed three of the five courses. In 2002 and 2004, plaintiff received an incomplete in two required courses for the 2101 position. She still had not completed them by January 2013. But in 2008, plaintiff completed all 34 courses that were prerequisites for transitioning to an IT position.

### Alleged Discriminatory Actions

There are five incidents about which plaintiff complains: (1) October 13–14, 2012 system failure and verbal reprimand; (2) November 9, 2012 notice of schedule change, effective November 16, 2012; (3) November 16, 2012 assignment to log tapes on day shift; (4) December 13, 2012 notice of schedule change, effective January 7, 2013; and (5) February 5, 2013 email. Although plaintiff did not distinctly delineate these events in the pretrial order, defendant did. Plaintiff did not controvert defendant's characterization of her claims, and the court believes that defendant's characterization is accurate. The court therefore analyzes plaintiff's claims using these incidents.

October 13–14, 2012 System Failure and Verbal Reprimand

On October 13, 2012, a system failure occurred on plaintiff's shift that caused the loss of some flight data. Plaintiff discussed the system failure on the phone with Smith the next day. According to plaintiff, Smith verbally reprimanded her over the phone. Plaintiff filed a union grievance about the system failure, and later the Union filed a grievance about Smith's verbal reprimand of plaintiff.

November 9, 2012 Notice of Schedule Change, Effective November 16, 2012

With the introduction of the new virtual equipment, the Computer Specialist's workload moved from the midnight shift to the day shift. After consulting with union representatives, Smith moved both Computer Specialists to the day shift—plaintiff and Dale Anderson, who is a white male. Smith gave plaintiff notice of the change on November 9, 2012. It was to take effect on November 16, 2012.

Plaintiff's schedule change did not impact her basic pay, but she did lose night differential pay. On November 10, 2012, plaintiff filed a union grievance about the schedule change.

<u>November 16, 2012 Assignment to Log Tapes on Day Shift</u>

November 16, 2012 was plaintiff's first day on the day shift.  That day, Smith asked plaintiff to log tapes, a regular duty of a Computer Specialist.  Plaintiff refused to do so because she believed the employees on the night shift were responsible for that task.  She also complained that Smith's work assignment constituted "slavery."  Smith did not discipline plaintiff for refusing to log the tapes.  But Plaintiff filed a union grievance regarding Smith's request for her to log tapes before she filed her formal discrimination complaint.

<u>December 13, 2012 Notice of Schedule Change, Effective January 7, 2013</u>

Dale Anderson retired on January 3, 2013.  On December 13, 2012, Smith changed plaintiff's schedule because of the retirement.  Effective January 7, 2013, plaintiff's schedule was changed from Friday through Monday, 7:00am to 4:00pm, to Monday through Thursday, 7:00am to 4:00pm.  Plaintiff's basic pay remained the same, but she lost premium weekend pay because she was not working weekends.  On December 21, 2012, plaintiff filed a union grievance regarding the schedule change.

<u>February 5, 2013 Email</u>

KCARTCC began using ERAM in January 2013.  On January 18, 2013, Page M. Weedon, an FAA Manager in the IT Business Office, emailed plaintiff about transitioning to the IT group within the next ninety days.  First, however, IT needed plaintiff to complete a "KSAI" assessment before February 15.

On February 5, 2013, plaintiff received an email from Smith that stated, "As per the email below [Page Weedon's January 18, 2013 email] you are required to complete the KSAI assesement

before it closes on 2/15." Plaintiff believed Smith's February 5, 2013 was discriminatory because she did not want to go to the IT department; she wanted to transition to the 2101 position instead. Randy Downing, an FAA management official, explained to plaintiff that she could not transition to the 2101 position because she failed to meet the requirements. She did not complete Course No. 47001, Troubleshooting Techniques, or Course No. 47504, Communication Equipment. The early retirement offer had expired, so plaintiff's only remaining option was to transfer to a position in the IT group.

Plaintiff admits that she did not complete Course Nos. 47001 and 47504, but argues that she did not complete them because they were discontinued and there were no substitute courses.

### Collective Bargaining Agreement/Union Contract

Plaintiff is a "bargaining unit, dues paying member of the PASS UNION." The agreement between the Professional Airways Systems Specialists (AFL-CIO) and the Federal Aviation Administration (Airway Facilities Service) Department of Transportation dated July 2, 2000 (hereinafter "collective bargaining agreement") is the agreement in effect during the relevant time period. The collective bargaining agreement states, "In matters relating to 5 U.S.C. 2303(b)(1) dealing with certain discriminatory practices, an aggrieved employee shall have the option of utilizing this grievance procedure or any other procedure available in law or regulation, but not both." The agreement then sets forth a five-step grievance procedure. For each of the acts above that plaintiff filed grievances (the first four identified), plaintiff abandoned her grievance after Step 1. She failed to complete Steps 2 through 5 as required by the collective bargaining agreement.

## III.    Discussion

### Claims Abandoned in the Pretrial Order

In her original EEO complaint, plaintiff cited the Rehabilitation Act, the Genetic Information Nondiscrimination Act of 2008 ("GINA"), and the Age Discrimination in Employment Act ("ADEA")

as sources for her claims. Defendant represents that plaintiff also sought relief under the Pregnancy Discrimination Act ("PDA"), but the court has not found that reference. In any event, plaintiff does not mention these statutes in the pretrial order.

Local Rule 16.2 states that the pretrial order, when approved by the court and filed with the clerk, "control[s] the subsequent course of the action." D. Kan. R. 16.2(c); *Hullman v. Bd. of Trs. of Pratt Cmty. Coll.*, 950 F.2d 665, 667 (10th Cir. 1991) ("The pretrial order supersedes the pleadings and controls the subsequent course of litigation."). This means that claims not identified in the pretrial order are deemed abandoned. Because the pretrial order does not address the Rehabilitation Act, GINA, ADEA, or PDA, these claims are no longer part of this case. In any event, these claims are futile and the court would grant summary judgment in favor of defendant if plaintiff were still pursuing them.

First: the Rehabilitation Act and GINA. To state a prima facie case of discrimination under the Rehabilitation Act, the plaintiff must show "(1) that [she] is disabled under the Act, (2) that [she] would be 'otherwise qualified' to participate in the program, (3) that the program . . . is a federal agency, and (4) that the program has discriminated against the plaintiff." *See Jarvis v. Potter*, 500 F.3d 1112, 1121 (10th Cir. 2007) (citation omitted). GINA makes it illegal for employers to terminate or otherwise discriminate against an employee because of the employee's genetic information. 42 U.S.C. § 2000ff-1(a)(1); *see also Punt v. Kelly Servs.*, No. 14-cv-02569-CMA-MJW, 2016 WL 67654, at *13 (D. Colo. Jan. 6, 2016). But "[w]ithout notice of a disability, an employer cannot be liable for discrimination against an employee on the basis of his disability." *See Bacon v. Great Plains Mfg., Inc.*, 958 F. Supp. 523, 530 (D. Kan. 1997) (citation omitted). The uncontroverted facts show that Smith was unaware that plaintiff had sickle cell or any other disability. He did not talk with her about it or otherwise mention it between 2010 and 2013. No reasonable factfinder could conclude that Smith

was motivated by plaintiff's sickle cell anemia when he made employment decisions between October 2012 and February 2013.  Plaintiff's Rehabilitation Act and GINA claims fail.

Second: the ADEA.  The ADEA prohibits discrimination against an employee because of her age.  29 U.S.C. § 623(a)(1).  The employee's age must be the "but-for" cause of an adverse employment action or the "factor that made a difference."  *See Simmons v. Sykes Enter., Inc.*, 647 F.3d 943, 947 (10th Cir. 2011) (citing *Jones v. Okla. City Pub. Sch.*, 617 F.3d 1273, 1277 (10th Cir. 2010).  Here, Smith did not know plaintiff's age when he made decisions affecting her during the October 2012 through February 2013 time period.  Plaintiff has brought forth no evidence showing that her age was the but-for cause of Smith's actions.  Any claim under the ADEA also fails.

Finally: the PDA (to the extent that plaintiff has ever claimed relief under it).  The PDA states that the terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment related purposes . . . ."  42 U.S.C. § 2000e(k).  Plaintiff, as a mother of a sixteen-year-old son, does not fall under the protection of the PDA.

## Constitutional Claims

In the pretrial order, plaintiff does identify claims under the United States Constitution.  These claims fail, however, because a federal employee may only seek judicial relief for employment discrimination through Title VII.  *Belhomme v. Widnall*, 127 F.3d 1214, 1217 (10th Cir. 1997) (citing *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 828–29, 835 (1976)).  There is no viable constitutional cause of action.  The court therefore dismisses plaintiff's constitutional claims under Fed. R. Civ. P. 12(b)(1).

## Claims Under the Collective Bargaining Agreement

Plaintiff also has no cause of action for alleged violations of the collective bargaining agreement. Title VII of the Civil Service Reform Act of 1978 ("CSRA") governs labor relations between the federal government and its employees. *See Celli v. Shoel*, 995 F. Supp. 1337, 1342 (D. Utah 1998) (citing *Karahalios v. Nat'l Fed'n of Fed. Employees, Local 1263*, 489 U.S. 527, 531 (1989); *see also Andrews v. Principi*, No. Civ. 1:01CV00910, 2003 WL 1790915, at *1 (M.D. N.C. Apr. 1, 2003). The CSRA does not give federal employees standing to sue their federal government employer in court for contractual violations of a collective bargaining agreement. *Karahallios*, 489 U.S. at 536. This court lacks jurisdiction over plaintiff's claims for violation of the collective bargaining agreement.

### Claims Based on Matters that were Grieved

As noted above, plaintiff filed union grievances regarding four of the five incidents about which she complains. She is barred from filing claims in court relating to these same incidents. First, the collective bargaining agreement prohibits suit about these claims, stating that "an aggrieved employee shall have the option of utilizing this grievance procedure or any other procedure available in law or regulation, but not both." Federal statute also bars suit on previously-grieved matters:

> An aggrieved employee affected by a prohibited personnel practice under section 2302(b)(1) of this title which also falls under the coverage of the negotiated grievance procedure may raise the matter under a statutory procedure or the negotiated procedure, but not both. An employee shall be deemed to have exercised his option under this subsection to raise the matter under either a statutory procedure or the negotiated procedure at such time as the employee timely initiates an action under the applicable statutory procedure or timely files a grievance in writing, in accordance with the provisions of the parties' negotiated procedure, whichever event occurs first.

5 U.S.C. § 7121(d). Federal regulations further support this required election of remedies:

> When a person is employed by an agency subject of 5 U.S.C. § 7121(d) and is covered by a collective bargaining agreement that permits allegations of discrimination to be raised in a negotiated grievance procedure, a person wishing to file a complaint or a grievance on a matter of alleged employment discrimination must elect to raise the matter under either part 1612 or the negotiated grievance procedure, but not both. An election to

proceed under this part is indicated only by the filing of a written complaint; use of the pre-complaint process as described in § 1614.105 does not constitute an election for purposes of this section.

29 C.F.R. § 1614.301(a) – Relationship to negotiated grievance procedure.

As these statutes and regulations establish, plaintiff may elect to file a grievance under the collective bargaining agreement if an employment action was motivated by her race, sex, or religion, or she can file a formal discrimination complaint regarding these issues. But she cannot do both. Plaintiff elected the grievance procedure by submitting four grievances in writing under the terms of the negotiated agreement. Her claims relating to those same matters are now barred. *See Douglas v. Norton*, 167 F. App'x 698 (10th Cir. 2006) (dismissing claims with prejudice for failing to exhaust claims through grievance procedure even though such claims could not be resolved through that procedure); *Giove v. U.S. Dep't of Transp.*, 178 F. App'x 814 (10th Cir. 2006) (barring termination claim because plaintiff previously elected to proceed through the grievance process); *Haney v. Donovan*, Civil No. 08-2658-JAR, 2010 WL 1284468, at *5, *7 (D. Kan. Mar. 30, 2010).

Plaintiff submitted grievances on: (1) October 13–14, 2012 system failure and verbal reprimand; (2) November 9, 2012 notice of schedule change from the midnight to day shift; (3) November 16, 2012 assignment of duties; and (4) December 13, 2012 schedule change from weekend to during the week. For each of these matters, plaintiff elected to proceed through the union grievance procedure before she filed her formal discrimination complaint on the same matters on February 13, 2012. Once plaintiff made her election, her election was irrevocable, and plaintiff is barred from presenting her claims on the same matters to this court. *See Haney*, 2010 WL 1284468, at *14.

### Claim Based on the February 13, 2013 Email

Plaintiff was aware since early 2000 that her Computer Specialist position would end once ERAM became fully operational. On April 4, 2013, ERAM became fully operational at KCARTCC.

On February 5, 2013, Smith emailed plaintiff, reminding her that she needed to complete her KSAI assessment before the FAA could transition her to the IT position.  In plaintiff's discrimination complaint, she identified the date of the last discriminatory act as February 5, 2013—presumably meaning that plaintiff believed the FAA's decision to transition her to the IT position was an adverse employment action.  Plaintiff wanted to transition to a 2101 position, not an IT position.

This decision, however, was not an adverse employment decision.  Title VII does not require employers to give employees their preferred work assignments.  *See Ellison v. Sandia Nat. Labs.*, 192 F. Supp. 2d 1240, 1257 (D. N.M. 2002).  Plaintiff wanted to be transferred to a position she was not qualified for.  She did not complete the 2101 training.  On the other hand, plaintiff had completed all necessary course prerequisites to transition to the IT position.  And the early retirement option was no longer available to her.

Plaintiff has no evidence showing how the February 5, 2013 decision to place her in the IT organization was an adverse employment action or a pretext for unlawful discrimination.  To the contrary, defendant has shown that it was a legitimate business decision.  The HOST computer had been turned off, and plaintiff's duties as a Computer Specialist position had ended.  She successfully passed all course prerequisites to transition to the IT position and she had failed to complete all course prerequisites to transition to 2101.  Plaintiff has offered no evidence suggesting that the decision had anything to do with her protected class characteristics.

### Hostile Work Environment

Defendant identified one final potential claim: hostile work environment.  Out of an abundance of caution, defendant addressed the potential claim because it was unclear whether plaintiff intended to bring it.  Certainly, it is not clear whether plaintiff intends to allege that she was subjected to a hostile work environment, and, if so, based on which protected characteristic.  Reading plaintiff's allegations

liberally, the court addresses the potential claim and concludes that it, too, must be dismissed. Smith's actions do not rise to the level of an abusive or hostile work environment.

To bring a viable hostile work environment claim, plaintiff must present evidence from which a jury could reasonably conclude that "(1) she is a member of a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on [the protected characteristic]; and (4) due to the harassment's severity or pervasiveness, the harassment altered a term, condition, or privilege of her employment and created an abusive work environment." *Chapman v. Carmike Cinemas*, 307 F. App'x 164, 168 (10th Cir. 2009). The circumstances to consider in each case include: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993). Any harassment must be "severe or pervasive" enough to be actionable harassment under Title VII. *See Nicely v. Rumsfield*, No. 04-1384-WEB, 2005 WL 1606590, at *3 (D. Kan. July 8, 2005); *Freeman v. Kansas*, 128 F. Supp. 2d 1311, 1323–24 (D. Kan. 2001).

The only incident that involves alleged hostility is plaintiff's phone conversation with Smith on October 14, 2012. Again, plaintiff already filed a grievance about this incident, which precludes court review of it. But even if the court were to consider the phone conversation as part of a hostile work environment claim, the claim still fails. Plaintiff testified that before the October 13–14, 2012 incident, she had no problems with Smith, and after the incident Smith never spoke to her like that again. Plaintiff claims that Smith called her a "bitch" during the conversation. But even if this is accepted as true, Smith only uttered this derogatory word on one occasion within the approximate four years Smith supervised plaintiff. A reasonable jury could not find that his single offensive utterance sufficiently affected the conditions of plaintiff's employment as to create a hostile work environment

under Title VII. *See Harris*, 510 U.S. at 22. That single comment, along with plaintiff's complaints about non-adverse schedule changes and work assignments, do not rise to the level of a severe or pervasive hostile work environment; she must be subjected to a steady barrage of offensive comments. *See Morris v. City of Colo. Springs*, 666 F.3d 654, 666 (10th Cir. 2012). Plaintiff has not provided any evidence to create a triable question of whether she was subjected to a hostile work environment.

## IV.    Conclusion

For all of the reasons above, the court grants summary judgment in favor of defendant. To the extent that plaintiff did not abandon certain claims in the pretrial order, the court dismisses them now. Defendant is also entitled to summary judgment on plaintiff's claims under the Constitution and the collective bargaining agreement. The court lacks jurisdiction over the claims that plaintiff elected to pursue through the negotiated grievance procedures. And the one claim that was not grieved is subject to summary judgment because plaintiff has no evidence of an adverse action or pretext. Defendant has offered a legitimate, non-discriminatory, business reason for refusing to give plaintiff the position she wanted. Finally, to the extent that plaintiff attempts to bring a claim for a hostile work environment, she has not produced adequate evidence to support it.

**IT IS THEREFORE ORDERED** that defendant's motion to dismiss and/or for summary judgment (Doc. 24) is granted.

The case is closed.

Dated this 5th day of February, 2018, at Kansas City, Kansas.

                                    s/ Carlos Murguia
                                    **CARLOS MURGUIA**
                                    **United States District Judge**